IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| ELIJAH AKEEN SAMPSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 416-016 |
| | ) | (Formerly CR 412-018) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at the Federal Correctional Institution in Jesup, Georgia, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.     BACKGROUND**

    **A.     Indictment**

On February 10, 2012, the grand jury in the Southern District of Georgia issued an indictment charging Petitioner with eight counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts One, Two, Four, Seven-Nine, Thirteen, and Sixteen); one count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count Three); one count of unlicensed dealing in firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (Count Five); six counts of felon in possession of a firearm, in violation of 18

U.S.C. § 922(g)(1) (Counts Six, Eleven, Twelve, Fifteen, Sixteen, and Eighteen); three counts of carrying a firearm during/in relation to drug trafficking, in violation of 18 U.S.C. § 924(c) (Counts Ten, Fourteen, and Seventeen); and one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count Nineteen). United States v. Sampson, CR 412-018, doc. no. 3 (S.D. Ga. Feb. 10, 2012) (hereinafter "CR 412-018"). The Court appointed attorney Robert P. Phillips, III to represent Petitioner. Id., doc. no. 16.

### B. Agreement to Plead Guilty

On June 6, 2012, Petitioner pleaded guilty to Counts Seventeen and Eighteen. Id., doc. nos. 30, 32, 39, 53. The plea agreement contained the following factual basis for the plea:

> [O]n or about December 19, 2012, in Chatham County, within the Southern District of Georgia, the defendant, ELIJAH AKEEN SAMPSON, aka ["]SHAWN," knowingly and unlawfully, and during and in relation to the drug trafficking offense charged in Count 16, used and carried a firearm, that is, a Taurus, Model PT-25, .25ACP caliber semiautomatic pistol, with obliterated serial number . . . .
>
> [O]n or about December 19, 2012, in Chatham County, within the Southern District of Georgia, the defendant, ELIJAH AKEEN SAMPSON, aka ["]SHAWN," who before that time had been convicted of a felony, an offense punishable by imprisonment for more than one year, did knowingly possess, in and affecting interstate commerce, a firearm, that is, a Taurus, Model PT-25, .25ACP caliber semiautomatic pistol, with obliterated serial number . . . .

Id., doc. no. 39, p. 4. Petitioner attested in the plea agreement he had sufficient time to review his case with his attorney, fully understood his rights and those he was giving up by pleading guilty, and voluntarily agreed to the plea agreement. Id. at 7.

## C. Change of Plea Hearing

During the change of plea hearing, United States District Judge William T. Moore, Jr., established Petitioner's competence to enter a guilty plea if he desired. Id., doc. no. 53, pp. 18-19. Petitioner testified under oath he had adequate time to discuss his case with his attorney and was entirely satisfied with the services rendered by Mr. Phillips. Id. at 10-11. Judge Moore read the indictment and asked if Petitioner understood the charges therein. Id. at 11-13. Petitioner confirmed he understood. Id. Judge Moore also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he understood those rights. Id. at 6-8.

Among the rights explained, Judge Moore reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Petitioner affirmed he had not been pressured or promised anything to plead guilty, id. at 17, 19, nor had anyone predicted Petitioner's exact sentence. Id. at 17-18. Judge Moore specifically asked Petitioner whether "anyone [had] done anything that you consider to be wrong or unfair which has forced you to plead guilty," to which Petitioner responded, "No, sir." Id. at 16. Judge Moore found Petitioner's plea to be made voluntarily and with an understanding of the charges and the plea's consequences. Id. at 18-19.

Judge Moore heard the factual basis for Petitioner's guilty plea from Special Agent Michelle Kaufman with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Id. at 20. Agent Kaufman summarized the facts underlying Petitioner's offense as follows:

> On December 19, 2011, [Petitioner] entered the [ATF undercover] store and met with ATF undercover agents, at which point they negotiated the sale of a

3

quantity of cocaine. It was approximately over 13 grams of cocaine, as well as the purchase of a Taurus PT-25 .25 caliber firearm . . . .

Id. at 20. After negotiating the sale, the undercover agents and Petitioner consummated the sale. Id. at 20-21. Testing found the drugs positive for cocaine hydrochloride and the gun was not manufactured within the state of Georgia. Id. at 21. Petitioner admitted to the factual basis for his offense, stating, "On December 19th I walked [in] the store. I met the undercover agent, sold him a firearm [and negotiated] the sale of cocaine . . . ." Id. at 22-23. Judge Moore accepted the guilty plea, finding a sound factual basis for it. Id. at 23-24.

### D. Presentence Investigation Report (PSI)

The United States Probation Office prepared a PSI, which set Petitioner's base offense level at twenty-four. PSI ¶ 27. Petitioner's adjusted offense level was thirty-three after enhancements of: (1) two levels because the offense involved a total of five firearms; (2) four levels because the firearm Petitioner sold had an altered or obliterated serial number; and (3) four levels because Petitioner engaged in trafficking of two or more firearms. PSI ¶¶, 28-29, 31, 35. Although Petitioner was convicted of possessing and carrying only one firearm, Petitioner sold ATF agents five firearms in total, and therefore the probation officer attributed five firearms to Petitioner for offense calculation purposes. PSI ¶ 19. Petitioner's adjusted offense level was decreased three points for acceptance of responsibility, resulting in a total offense level of thirty. PSI ¶¶ 37-39.

Based on a total offense level of thirty and a criminal history category of IV, Petitioner's guideline imprisonment range was 135 to 168 months on Count Eighteen. PSI ¶ 62. However, because the statutorily authorized maximum sentence was 120 months imprisonment, the guideline range was 120 months. Id. Petitioner's guideline imprisonment

range was 180 months on Count Seventeen, to be imposed consecutive to Count Eighteen. Id. After a three-level reduction for acceptance of responsibility, Petitioner's final guideline range was 262 to 327 months. Id.

### E. Sentencing

Through counsel, Petitioner filed one objection to the PSI, arguing Count Seventeen was not a controlled substance offense and therefore Petitioner's characterization as a career offender was erroneous. PSI Addendum. Petitioner's counsel also filed a sentencing memorandum, arguing ATF agents engaged in sentencing entrapment/manipulation by repeatedly enticing Petitioner to sell more drugs and weapons after they had more than sufficient probable cause to arrest him. CR 412-018, doc. no. 35.

At the sentencing hearing on November 2, 2012, the Court heard testimony from ATF Special Agent Brian A. Moore. Id., doc. no. 51-1, pp. 5-25. The government also played a video of the transaction to which Petitioner pleaded guilty. Id. at 24. After hearing testimony from Agent Moore, Judge Moore denied from the bench Petitioner's arguments regarding sentence entrapment/manipulation and his objection to the PSI. Id. at 25-30. Judge Moore held the Eleventh Circuit does not recognize the sentencing entrapment defense. Id. at 26-28. The Court provided Petitioner with an opportunity to make a personal statement, but he declined to do so. Id. at 31.

Judge Moore sentenced Petitioner to 120 months imprisonment as to Count Eighteen and sixty months imprisonment as to Count Seventeen, to run consecutively, for a total term of 180 months imprisonment, five years of supervised release, and a $200.00 special assessment, well below Petitioner's guideline range of 262 to 327 months imprisonment. Id., doc. no. 41; doc. no. 51-1, pp. 31-39. Final judgment was entered on November 6, 2012.

5

Id., doc. no. 41. Petitioner did not file an appeal.

### F. Post-Conviction Proceedings

On June 29, 2015, United States Attorney Edward J. Tarver disclosed to the Court information regarding an "improper relationship" between Assistant United States Attorney ("AUSA") Ippolito and ATF Special Agent Louis Valoze. In Re: Ippolito & Valoze, MC 215-002, doc. no. 1 (S.D. Ga. Feb. 11, 2015). The Court ordered the United States Attorney to "submit a list of all cases . . . in which AUSA Ippolito and Agent Valoze collaborated." Id. The list included Petitioner's case. Id., doc. no. 4-1, p. 16.

On January 13, 2016, in response to this disclosure, Petitioner filed the present 28 U.S.C. § 2255 motion. (Doc. nos. 1, 2.) Petitioner alleges two grounds of relief: (1) Agent Valoze and AUSA Ippolito's extramarital relationship constituted entrapment; and (2) Petitioner is entitled to a new sentencing hearing because the government failed to disclose the affair in violation of Giglio v. United States, 405 U.S. 150 (1972). (Doc. nos. 1, 2, 13.) Respondent asserts Petitioner's motion is untimely and meritless. (Doc. no. 10.)

## II. DISCUSSION

### A. There is No Need for an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not

entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). Because Petitioner's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner Timely Asserted His Giglio Claim Based on Disclosure of the Affair, But His Entrapment Claim Is Untimely Under § 2255(f).

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Judgment entered in Petitioner's case on November 6, 2012, CR 412-018, doc. no. 41, and because Petitioner did not file a timely direct appeal, his conviction and sentence became final fourteen days later. See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000) (explaining where no timely notice of appeal is filed and motion for leave to file out of

7

time appeal is denied, judgment of conviction final on expiration of deadline for filing notice of appeal); Fed. R. App. P. 4(b)(1). Petitioner did not file his present motion until January 13, 2016.[1] (See doc. no 2, p. 17.) Thus, Petitioner filed his § 2255 motion more than one-year after his conviction became final.

Petitioner contends his motion is based on "newly discovered evidence," presumably this Court's order detailing the government's disclosure of the improper relationship between Agent Valoze and AUSA Ippolito. (Doc. no. 1, p. 5.) Consequently, Petitioner's claims regarding the government's failure to disclose the affair between Agent Valoze and AUSA Ippolito are timely under 28 U.S.C. § 2255(f)(4).

However, Petitioner also makes reference to entrapment in Ground One of his petition. (Doc. no. 1, p. 4.) If Petitioner is indeed claiming he was entrapped into committing the charged crimes, he knew the relevant facts that would support such a claim at the time of his guilty plea in June 2012. Indeed, as Petitioner admits, he raised the entrapment defense at sentencing. (Doc. no. 2, p. 7); CR 412-018, doc. no. 35. Therefore, Petitioner's entrapment defense in the § 2255 motion is untimely and barred.

### C. Petitioner Has Not Demonstrated He Is Entitled to Equitable Tolling of His Entrapment Claim or a Fundamental Miscarriage of Justice Has Occurred.

Nevertheless, an otherwise untimely § 2255 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent the application of AEDPA's

---

[1] Under Houston v. Lack, 487 U.S. 266, 276 (1988), Petitioner's motion is deemed filed on the date of delivery to prison officials for mailing. The Court construes the date of Petitioner's signature as the date of delivery to prison officials for mailing. See Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam).

8

statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted), *cert. denied*, 133 S. Ct. 351 (2012). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more

likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. at 1933 (emphasis added).

Petitioner does not argue extraordinary circumstances prevented him from timely asserting an entrapment claim. Nor could he since he asserted an entrapment defense at sentencing. Further, Petitioner has not presented any new evidence to suggest he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him. The only new evidence Petitioner presents is the relationship between AUSA Ippolitto and Agent Valoze. Left undisputed, however, is the government's evidence Petitioner entered the store, negotiated the sale of thirteen grams of cocaine and a firearm with an obliterated serial number, and completed the sale. CR 412-018, doc. no. 53, pp. 20-21. Therefore, Petitioner is not eligible for equitable tolling, nor has he shown a fundamental miscarriage of justice.

### D. Petitioner Has Not Shown Entitlement to Relief on the Merits of His Claims Regarding Non-Disclosure of the Affair.

Petitioner's contention that the government improperly withheld evidence of AUSA Ippolito and Agent Valoze's affair in violation of Brady v. Maryland, 373 U.S. 83 (1963) likewise lacks merit. Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." Id. at 87. Here, evidence of the affair amounts at most to impeachment evidence that could have been used on cross-examination of Agent Valoze had Petitioner proceeded to a jury trial. However, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 633 (2002). Therefore,

Petitioner was not entitled to information about the affair before deciding whether or not he would plead guilty.

Finally, the Supreme Court's decision in Giglio v. United States, 405 U.S. 150 (1972), has no bearing on Petitioner's case. As the Eleventh Circuit explained,

> Giglio error is a species of Brady error that occurs when "the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." United States v. Agurs, 427 U.S. 97 (1976). "If false testimony surfaces *during a trial* and the government has knowledge of it, . . . the government has a duty to step forward and disclose." Brown v. Wainwright, 785 F.2d 1457, 1464 (11th Cir. 1986). "In order to prevail on a Giglio claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999).

Ventura v. Attorney Gen., Fla., 419 F.3d 1269, 1276-77 (11th Cir. 2005) (emphasis added). Because Petitioner never went to trial, Giglio is inapplicable to Petitioner's case. Furthermore, Petitioner has presented no allegation or evidence that the government ever relied on any false statement in the investigation and prosecution of the case against Petitioner. Ruiz is controlling, and therefore the government did not have to disclose the impeaching evidence of the affair before accepting Petitioner's guilty plea. Ruiz, 536 U.S. at 633. Accordingly, Petitioner's claims are without merit.

### E. A Certificate of Appealability Should Not Issue.

The Court also recommends denial of a certificate of appealability ("COA") and denial of *in forma pauperis* ("IFP") status on appeal. A federal prisoner must obtain a COA before appealing the denial of his motion to vacate. The District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

11

Applying the COA standards, which are set forth in Brown v. United States, 407 CV 085, 2009 WL 307872, at *1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues regarding the instant § 2255 motion, so no COA should issue. 28 U.S.C. § 2253(c)(1); see Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case . . . no appeal would be warranted."); see also Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed notice of appeal). Since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, IFP status on appeal should likewise be denied. 28 U.S.C. § 1915(a)(3).

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent. The Court further **RECOMMENDS** Petitioner be **DENIED** a COA and permission to appeal IFP.

SO REPORTED and RECOMMENDED this 14th day of November, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA